# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason E. Williams,               :
               Petitioner    :
                             :
        v.                    :   No. 1243 C.D. 2018
                             :   Submitted:  May 3, 2019
Pennsylvania Board       :
of Probation and Parole,   :
              Respondent  :


BEFORE:  HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**          **FILED:  August 21, 2019**


Petitioner Jason E. Williams (Williams) petitions for review of a final determination of the Pennsylvania Board of Probation and Parole (Board), dated August 16, 2018.  The Board denied Williams' request for administrative relief, thereby rejecting his claim that the Board erred (1) by failing to hold a timely revocation hearing and (2) by failing to grant him credit for all his time served at liberty on parole.  For the reasons set forth below, we affirm.

Williams pled guilty to a violation of Section 3802(d)(3) of the Vehicle Code,  75 Pa. C.S. § 3802(d)(3),[1] pertaining to driving under the influence of

---

[1] Section 3802(d)(3) of the Vehicle Code makes it unlawful for an individual to "drive, operate or be in actual physical control of the movement of a vehicle" when "[t]he individual is

combined substances (DUI-Combined Substances), and the Court of Common Pleas of Philadelphia County sentenced him to a period of one to four years' incarceration on October 30, 2014. Thereafter, on June 22, 2015, the Court of Common Pleas of Bucks County (Bucks C.C.P.), as a result of the DUI conviction, revoked Williams' probation for a 2009 conviction for violating Section 13(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act),[2] relating to Possession with the Intent to Deliver (PWID), and sentenced him to a period of one to two years' incarceration. (Certified Record (C.R.) at 1, 7.) The Department of Corrections aggregated these sentences, resulting in an original minimum sentence date of November 3, 2015, and an original maximum sentence date of November 1, 2018. (*Id.* at 1-2.) The Board granted Williams parole by Board Decision recorded on February 9, 2016. (*Id.* at 4, 7.) He was released on parole on April 19, 2016. (*Id.* at 7.)

The Bristol Township Police Department arrested Williams for the offense of PWID on March 7, 2017. (*Id.* at 13.) The Bucks C.C.P. set Williams' monetary bail on March 7, 2017, but Williams never posted bail. (*Id.* at 19, 72-73.) The Board issued a warrant to commit and detain Williams on March 13, 2017. (*Id.* at 15.) The Board issued a notice of charges to inform Williams of his upcoming detention hearing before the Board. (*Id.* at 20.) Williams subsequently waived his

---

under the combined influence of alcohol and a drug or combination of drugs to a degree which impairs the individual's ability to safely drive, operate or be in actual physical control of the movement of the vehicle."

[2] Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780-113(a)(30). Section 13(a)(30) of the Drug Act prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance," unless otherwise authorized by the Drug Act.

rights to representation by counsel and to a detention hearing on March 23, 2017. (*Id.* at 16.) By Board Decision recorded on April 27, 2017, the Board detained Williams pending disposition of his criminal charges. (*Id.* at 25.)

On November 13, 2017, Williams pled guilty to PWID, and the Bucks C.C.P. sentenced him to incarceration at the Bucks County Prison for a minimum sentence of 11 months, 29 days and a maximum sentence of 23 months, 29 days. (*Id.* at 33.) Williams began serving this sentence on that same date. (*Id.* at 33.) The Board received official verification of Williams' new criminal conviction on December 15, 2017. (*Id.* at 38.) On February 14, 2018, the Board subsequently issued a notice of charges based upon Williams' new criminal conviction, informing Williams of his upcoming parole revocation hearing scheduled for February 27, 2018. (*Id.* at 30.) A hearing examiner continued the hearing based upon Williams' unavailability. (*Id.* at 35.) After serving his minimum sentence at Bucks County Prison, Williams transferred to the State Correctional Institution at Graterford (SCI-Graterford) on March 15, 2018. (*Id.* at 75, 81.)

Williams waived his right to a panel revocation hearing before the Board and, instead, requested that his revocation hearing be held before a hearing examiner. (*Id.* at 37.) A hearing examiner conducted the revocation hearing on April 9, 2018, during which Parole Agent Mahmoud (Agent) and Williams, represented by counsel, testified. (*Id.* at 36, 40.)

Agent testified that he received the official verification of Williams' new criminal conviction on December 15, 2017. (*Id.* at 62.) Counsel objected to the timeliness of the revocation hearing because Agent offered no documentation supporting the allegation that agents received official verification of Williams' new criminal conviction on December 15, 2017. (*Id.* at 39, 63.) The hearing examiner,

appearing to accept December 15, 2017, as the date of official verification, overruled Counsel's timeliness objection because the hearing examiner was conducting the hearing (on April 9, 2018) within 120 days of the date of the official verification of Williams' new criminal conviction (December 15, 2017). (*Id.* at 61-63.) Williams testified that he acknowledged his new conviction of PWID and that he completed his minimum sentence at Bucks County Prison and returned to SCI-Graterford. (*Id.* at 64-65.)

By Board action recorded on April 25, 2018 (mailed May 1, 2018), the Board recommitted Williams as a convicted parole violator to serve 12 months' backtime. (*Id.* at 82.) The Board denied Williams credit for the time spent at liberty on parole, citing the reason as "new conviction same/similar to original offense." (*Id.* at 82-83.) The Board recalculated his maximum sentence date to be September 20, 2020. (*Id.* at 83.)

Williams challenged the Board's decision by filing an administrative remedies form on May 23, 2018, alleging: (1) the Board violated his Constitutional due process rights by denying him a timely revocation hearing; and (2) the Board erred by denying him credit for the entirety of his time spent at liberty on parole because he did not commit a crime of violence nor a crime requiring his registration as a sexual offender. (*Id.* at 84-85.) The Board affirmed its decision that it had held a timely revocation hearing and that it had properly exercised its discretion to deny Williams credit for time served at liberty on parole. (*Id.* at 89.) With regard to the timeliness of the revocation hearing, the Board reasoned:

> The record reflects that you pled guilty to the new offenses on November 13, 2017[,] and you were returned to a state correctional institution ("SCI") for the first time since your release on parole on March 15, 2018, after you were paroled from your Bucks County sentence. There is no

4

indication that you waived your right to a panel hearing prior to your return to an SCI. Because you were confined outside the jurisdiction of the Pennsylvania Department of Corrections at the time of your conviction, the Board was required to hold the revocation hearing within 120 days of the date they received official verification of your return to an SCI. 37 Pa. Code § 71.4(1)(i). In this case, you were returned to an SCI on March 15, 2018, and the Board conducted the revocation hearing 25 days later on April 9, 2018.

(*Id.* at 90.) In support of its decision to deny credit to Williams for the time he spent at liberty on parole, the Board reasoned:

Pursuant to the Supreme Court's ruling in *Pittman v.* [*Pennsylvania Board of Probation and Parole*, 159 A.3d 466 (Pa. 2017)], the Board must articulate the basis for its decision to grant . . . [or] deny a convicted parole violator credit for time spent at liberty on parole. The Board action mailed May 1, 2018, articulates that you were denied credit for the time you spent at liberty on parole because your new conviction was the same/similar to your original offense. This is a sufficient reason for denying credit for time spent at liberty on parole. *Colon-Vega v. Pa.* [*Bd. of Prob. & Parole* (Pa. Cmwlth., No. 2496 C.D. 2015, filed August 29, 2016)].

(*Id.*)

On appeal to this Court,[3] Williams argues that (1) the Board violated his Constitutional due process rights because it failed to hold his revocation hearing within the mandated 120-day period after receiving official verification of his return to a state correctional institution as required by Section 71.4(1)(i) of the Board's regulations, 37 Pa. Code § 71.4(1)(i), and that (2) the Board abused its discretion by

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. § 704.

denying him credit for all time spent at liberty on parole because the Board did not provide a sufficient contemporaneous statement to explain its decision to deny him credit for his time spent at liberty on parole.

We first consider Williams' claim that the Board erred in concluding that his April 9, 2018 revocation hearing was timely. Williams argues that his revocation hearing was untimely, as it occurred outside of the 120-day period to hold a revocation hearing as mandated by Section 71.4(1)(i) of the Board's regulations.[4] Generally, the Board bears the burden to prove, by a preponderance of the evidence, that it held a timely revocation hearing for an individual. *Saunders v. Pa. Bd. of Prob. & Parole*, 568 A.2d 1370, 1371 (Pa. Cmwlth.), *appeal denied*, 590 A.2d 760 (Pa. 1990). Pursuant to Section 71.4 of the Board's regulations, the Board must

---

[4] In his brief, Williams references facts that differ from those of record and predate the November 13, 2017 conviction that resulted in the revocation of parole at issue now before the Court. For instance, Williams argues in his brief that his "[p]anel revocation hearing [was] held on March 30, 2016." (Petitioner's Br. at 12.) Williams, however, did not have a panel revocation hearing on March 30, 2016; instead, he elected to proceed before a hearing examiner who conducted a hearing on April 9, 2018. (C.R. at 37.) We note that as of March 30, 2016, Williams was awaiting his release to parole following the Board's Decision recorded on February 9, 2016; his release occurred on April 19, 2016. (*See id.* at 4, 7.) Williams also states in his brief that his hearing was not timely as it was held beyond 120 days of his return to SCI-Graterford on November 3, 2015. (Petitioner's Br. at 12.) We note that November 3, 2015, is the minimum sentence date for the sentences from which Williams was paroled by the Board Decision recorded on February 9, 2016, but he remained in the custody of the Department of Corrections until his release on parole on April 19, 2016. Following his 2017 conviction, Williams transferred to SCI-Graterford on March 15, 2018. (C.R. at 75, 81.) As such, March 15, 2018, is the relevant date for our analysis. Williams also references February 2, 2016, as the date on which the Board received "proof of [his] conviction," which is impossible given that the relevant conviction did not occur until November 13, 2017. (Petitioner's Br. at 12; C.R. at 29.) It is unclear the basis on which Williams advances these dates in his brief, and there is no evidence within the record before the Board that would support Williams' factual allegations.

6

abide by the following procedures before a parolee can be recommitted as a convicted parole violator:

> (1)     A revocation hearing shall be held within 120 days from the date the Board received official verification[5] of the plea of guilty . . . *except* as follows:
>
>> (i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as . . . *confine[d] in a county correctional institution* where the parolee has not waived the right to a revocation hearing[,] . . . the revocation hearing shall be held within 120 days of *the official verification of the return of the parolee to a State correctional facility*.
>>
>> (ii) A parolee who is *confined in a county correctional institution* and who has waived the right to a revocation hearing by a panel . . . shall be deemed to be within the jurisdiction of the Department of Corrections *as of the date of the waiver*.

37 Pa. Code § 71.4 (emphasis added).

Section 71.4 of the Board's regulations, therefore, explicitly sets forth the dates in which the clock begins to run against the Board in order for it to hold a timely revocation hearing for a parolee. Under Section 71.4(1)(i), time begins to run when the Board receives "official verification" that the parolee, who has been convicted on new criminal charges and has not waived his right to a revocation hearing, has returned to a state correctional institution and is, again, under the jurisdiction of the Department of Corrections. 37 Pa. Code § 71.4(1)(i). Under Section 71.4(1)(ii), time begins to run on the date when a parolee, who has been convicted on new criminal charges and who is outside the jurisdiction of the

---

[5] "Official verification" is defined as an "[a]ctual receipt by a parolee's supervising parole agent of a direct written communication from a court in which a parolee was convicted of a new criminal charge attesting that the parolee was so convicted." 37 Pa. Code § 61.1 (definitions).

7

Department of Corrections, waives his panel revocation hearing. 37 Pa. Code § 71.4(1)(ii).[6]

In this case, Section 71.4(1)(i) of the Board's regulations applies to Williams. Here, Williams received a new criminal conviction and sentence to be served at a county correctional institution, Bucks County Prison. Following the criminal proceedings, Williams remained at the county prison until the completion of his minimum sentence, and he only returned to a state correctional institution on March 15, 2018. Williams, therefore, remained outside the jurisdiction of the Department of Corrections until March 15, 2018. Pursuant to Section 71.4(1)(i), the Board had 120 days to hold a revocation hearing for Williams from the date of the official verification of his return to a state correctional institution. The Board held Williams' revocation hearing on April 9, 2018. The Board, therefore, held the revocation hearing only twenty-five days after his return to the state correctional institution, which is well within the mandated 120-day requirement as set forth under Section 71.4(1)(i). Thus, the Board did not err in its conclusion that it held a timely revocation hearing for Williams on April 9, 2018.

We next consider whether the Board erred by denying Williams credit for all the time he spent at liberty while on parole. Williams essentially argues that the Board abused its discretion in denying him credit because the Board did not provide a sufficient contemporaneous statement to support its decision. In support of his argument, Williams alleges that his case is similar to *Marshall v. Pennsylvania Board of Probation and Parole*, 200 A.3d 643 (Pa. Cmwlth. 2018), because the

---

[6] Section 71.4(1)(ii) does not apply to Williams because there are no facts within the record before the Board to suggest that Williams had waived his panel revocation hearing prior to April 9, 2018, the actual date of his revocation hearing. (*See* C.R. at 37-45, 59-68.)

8

Board failed to consider the individual factual circumstances in his case when determining whether to grant him credit for time on parole. We disagree.

When determining whether there has been an abuse of discretion, the Pennsylvania Supreme Court has held that "an abuse of discretion is not merely an error of judgment, but occurs only where the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will." *Zappala v. Brandolini Prop. Mgmt., Inc.*, 909 A.2d 1272, 1284 (Pa. 2006); *see also Moss v. SCI-Mahanoy Superintendent Pa. Bd. of Prob. & Parole*, 194 A.3d 1130, 1133 n.5 (Pa. Cmwlth. 2018), *appeal denied*, ___ A.3d ___ (Pa., No. 824 MAL 2018, filed June 18, 2019).

Section 6138(a)(2.1) of the Prisons and Parole Code, 61 Pa. C.S. § 6138(a)(2.1), sets forth guidelines for the Board's discretionary power in granting and denying credit for parole time and provides:

> The Board may, in its discretion, award credit to a parolee recommitted under paragraph (2)[7] for the time spent at liberty on parole, unless any of the following apply:
>
> (i) The crime committed during the period of parole . . . is a crime of violence . . . or a crime requiring registration [as a sexual offender].
>
> (ii) The parolee was recommitted under [S]ection 6143 [of the Prisons and Parole Code, 61 Pa. C.S. § 6143,] (relating to early parole of inmates subject to Federal removal order).

---

[7] Section 6138(a)(2) of Prisons and Parole Code, 61 Pa. C.S. § 6138(a)(2), provides, in part: "If the parolee's recommitment is so ordered, the parolee shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, *except as provided under paragraph (2.1)*, *shall be given no credit* for the time at liberty on parole." (Emphasis added.)

9

The Pennsylvania Supreme Court has held that, pursuant to Section 6138(a)(2.1) of the Prisons and Parole Code, "the Board must provide a contemporaneous statement explaining its reason for denying a [convicted parole violator] credit for time spent at liberty on parole." *Pittman*, 159 A.3d at 475. The Supreme Court specified, however, that a "single[-]sentence explanation" given by the Board explaining its decision "is likely sufficient in most instances" to meet the *Pittman* standard. *Id.* at 475 n.12. Moreover, this Court has found several single-sentence explanations given by the Board for its decision to deny a convicted parole violator credit for time spent at liberty on parole as sufficient to meet the *Pittman* standard. *See, e.g., Tres v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 828 C.D. 2018, filed June 3, 2019) (holding Board's stated reason "arrested for a firearms charge" satisfied *Pittman* standard);[8] *Bleach v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 794 C.D. 2017, filed May 31, 2019) (holding Board's stated reason "[r]evoke street time due to second conviction (drugs) while on parole" satisfied *Pittman* standard); *Lawrence v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 1132 C.D. 2018, filed April 12, 2019) (holding Board's stated reason "new conviction same/similar to the original offense" satisfied *Pittman* standard); *Smoak v. Talaber*, 193 A.3d 1160, 1165 (Pa. Cmwlth. 2018) (holding Board's stated reason of "unresolved drug and alcohol issues" satisfied *Pittman* standard).

This Court in *Marshall*, however, held that the Board's one-sentence explanation for denying a convicted parole violator credit for time spent at liberty on parole failed to meet the *Pittman* standard. *Marshall*, 200 A.3d at 651-52. Marshall was originally sentenced and incarcerated for murder in the third degree

---

[8] Pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), an unreported panel decision issued by this Court after January 15, 2008, may be cited "for its persuasive value, but not as binding precedent."

and robbery. After being paroled, Marshall was arrested and convicted of a Delaware crime similar to the Pennsylvania crime of PWID. The Board denied Marshall credit for his time spent at liberty on parole, stating only "felony drug[-]related crimes." *Marshall*, 200 A.3d at 647, 650. The Court held that the Board's reason to deny Marshall credit failed to satisfy the required *Pittman* standard, because "the Board's articulated reason simply restates the conviction without an individual assessment of the facts surrounding Marshall's parole revocation." *Id.* at 651. The Court remanded the case to the Board and ordered the Board, "[a]t a minimum, . . . [to give a] statement of reasons [that] . . . accurately reflect[ed] the facts informing its decision." *Id.* at 652. The focus of our decision in *Marshall* was the lack of explanation offered by the Board, as the Board did not explain why felony drug-related charges following parole from a murder conviction warranted a denial of discretionary credit for time spent at liberty on parole.

Unlike in *Marshall*, the record now before the Court reveals that the Board provided Williams with a sufficient contemporaneous statement supporting its decision to deny him credit for the time served on parole to satisfy the *Pittman* standard and, therefore, did not abuse its discretion. (C.R. at 82-83.) Here, the Board did not merely restate the offense for which Williams was most recently convicted. Rather, the Board clearly considered the individual circumstances surrounding Williams' parole revocation, as the Board compared Williams' original convictions and most recent conviction and determined that Williams' "new conviction [was the] same/similar to [his] original offense." (C.R. at 83.) This determination that, despite being granted parole, Williams was once again convicted of the "same" or "similar" offense as his earlier offenses is borne out by the record, which demonstrates that Williams was convicted of three drug-related offenses—PWID (for which he was

11

twice convicted) and DUI-Combined Substances (for which he was once convicted). The Board, therefore, appropriately applied the *Pittman* standard by providing its rationale for its decision, and the rationale given is not "manifestly unreasonable, or the result of partiality, prejudice, bias or ill will." *Zappala*, 909 A.2d at 1284. Moreover, this Court in *Lawrence* recently concluded that this same rationale offered by the Board was sufficient for purposes of *Pittman* where the convicted parole violator's new conviction and original offense were both drug-related. *See Lawrence*, slip op. at 9. While our decision in *Lawrence* is not binding, it nevertheless bolsters our analysis in this matter. Based on the above analysis, we conclude that the Board did not abuse its discretion by not crediting Williams for his time spent at liberty on parole.

Accordingly, we affirm the final determination of the Board.

P. KEVIN BROBSON, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason E. Williams,  :
          Petitioner  :
            :
        v.  : No. 1243 C.D. 2018
            :
Pennsylvania Board  :
of Probation and Parole,  :
          Respondent  :

## **O R D E R**


AND NOW, this 21st day of August, 2019, the final determination of the Pennsylvania Board of Probation and Parole, dated August 16, 2018, is AFFIRMED.


 

                          P. KEVIN BROBSON, Judge